UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

02 APR -5 PM 2: 04

U.S. DISTRICT COURT
N.D. OF ALABAMA

EDWARD C. CONWAY, individually, and )
as Executor of the Estate of Linda L. Conway, )
deceased, )
            )
      **Plaintiff,** )
            )
**vs.**             )
            )
UNITED STATES OF AMERICA; and )
DAVID WAYNE PERRY, )
            )
      **Defendants.** )

Civil Action No. CV-01-S-2838-NE

ENTERED

APR - 5 2002

## MEMORANDUM OPINION

This action is before the court on the motion to dismiss filed by defendant United States of

America, asserting that all claims against the United States are due to be dismissed for lack of

subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Plaintiff Edward C. Conway, individually,

and as Executor of the estate of his deceased wife, Linda L. Conway, originally filed this wrongful

death action in the Circuit Court of Madison County, Alabama.[1]  The defendants named in the

caption of his state court complaint were Robert W. Colby and David Wayne Perry. Plaintiff alleged

that a motor vehicle driven by defendant Robert W. Colby on Rideout Road in the City of Huntsville,

Alabama, on September 29, 1999, in which Linda Conway was riding as a passenger, collided with

a vehicle driven by defendant David Wayne Perry.[2]  Linda Conway died as a result of injuries

sustained during the collision. Plaintiff alleged that both the collision and his wife's resulting death

were proximately caused by the combined and concurring negligence and wantonness of defendants

---

[1]*See* the state court complaint attached to the Notice of Removal (doc. no. 1) as "Exhibit A."
[2]*Id.* ¶¶ 2,4.



25

Colby and Perry.[3]

Defendant Colby, who originally appeared through private counsel, removed the action on November 6, 2001.[4] He alleged that this court possessed original jurisdiction of the action by virtue of the following statute:

> Subject to the provisions of chapter 171 of this title, the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission *of any employee of the Government while acting within the scope of his office or employment*, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis supplied).  Colby's Notice of Removal failed to aver, however, that he was, on the date and at the place of the occurrence giving rise to the underlying state action, an employee of the United States government, acting within the scope of his employment. Accordingly, this court entered an order on November 19, 2001, requiring defendant Colby to show cause why the action should not be remanded to state court.[5]

That show cause order precipitated an appearance by the United States Attorney.  In the "Notice of Substitution and Application For Order Thereon" filed on November 21, 2001, the

---

[3]*Id.* ¶¶ 3, 5.

[4]Nothing appearing in the record presented to this court indicates whether co-defendant David Wayne Perry was served with summons and complaint in state court prior to removal. Defendant Colby alleged only that he "was the first defendant served [in the state court proceedings] and this action is being removed within 30 days from the date of service." Notice of Removal (doc. no. 1), ¶ 2. The so-called "unanimity requirement" mandates that, in cases involving multiple defendants, all defendants properly joined and served must consent to removal. *See* 28 U.S.C. § 1446(b); *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1044 (11th Cir. 2001) (citing *Chicago, R.I. & P. Ry. Co. v. Martin*, 178 U.S. 245, 247-48, 20 S.Ct. 854, 44 L.Ed. 1055 (1900); *In re Ocean Marine Mutual Protection and Indemnity Ass'n, Ltd.*, 3 F.3d 353, 355-56 (11th Cir.1993); *In re Federal Sav. & Loan Ins. Corp.*, 837 F.2d 432, 434 (11th Cir.1988)). Even so, this is a procedural defect in the removal process and, accordingly, it can be waived through — as here — a state court plaintiff's failure to attack the defect through a motion to remand, filed within thirty days of removal. *See* 28 U.S.C. § 1447(c).

[5]Doc. no. 3.

government alleged that:

> At all times relevant to the incident alleged in the Complaint, defendant
> ROBERT W. COLBY was acting within the scope of his employment as an
> employee of the United States and the United States Attorney for the Northern
> District of Alabama has so certified.  See Certification of Scope of Employment
> (filed contemporaneously herewith).
>
> The Federal Tort Claims Act ("FTCA"), at 28 U.S.C. § 2679(b)(1), provides
> that a suit against the United States shall be the exclusive remedy for persons with
> common law tort claims resulting from the acts or omissions of federal employees
> done within the scope of their office or employment.
>
> Both the FTCA (specifically 28 U.S.C. § 2679(b)(2)) and regulations
> promulgated thereunder (specifically 28 C.F.R. § 15.3(a) (1997)) provide that upon
> the certification of the United States Attorney that a federal employee was acting
> within the scope of his employment at the time of the incident out of which the claim
> arose, any action commenced in a state court shall be removed to the district court
> of the United States; further, such an action will be deemed to be an action against
> the United States[,] and the United States shall be substituted as the party defendant.[6]

This court subsequently entered an order substituting the United States as a defendant in place of

Robert W. Colby, and dismissed all claims against defendant Colby.[7]

The United States then filed the subject motion to dismiss, together with an evidentiary

submission, on January 25, 2002.[8]  This court entered an order on January 29, 2002, directing

plaintiff to submit his brief and any evidentiary materials he intended to rely upon in opposition to

the government's motion by dates specified in the order.[9]  Plaintiff did not file either a brief, or any

evidentiary materials.

## I. STANDARD OF REVIEW

The government's motion to dismiss asserts that this court lacks jurisdiction over the subject

---

[6]Doc. no. 5, ¶¶ 2 – 4.

[7]Doc. no. 7.

[8]Doc. nos. 10 (motion) and 11 (evidentiary submission).

[9]Doc. no. 13 (submission order).

matter of the controversy. *See* Fed. R. Civ. P. 12(b)(1).[10]  When ruling upon a Rule 12(b)(1) motion,

the court must first determine whether the moving party is mounting a "facial" or "factual" attack

on the court's subject matter jurisdiction. The former Fifth Circuit, explained the difference — and

the resulting effect on the district court's framework of analysis — in *Williamson v. Tucker*, 645 F.2d

404 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed. 212 (1981).[11]

> A motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), can
> be based on the lack of jurisdiction *on the face of the complaint*. If so, the plaintiff
> is left with safeguards similar to those retained when a Rule 12(b)(6) motion to
> dismiss for failure to state a claim is raised — the court must consider the allegations
> in the plaintiff's complaint as true. *E.g., Spector v. L Q Motor Inns, Inc.*, 517 F.2d
> 278, 281 (5th Cir. 1975); *Herpich v. Wallace*, 430 F.2d 792, 802 (5th Cir. 1970). *But
> the two motions are treated quite differently when matter outside the complaint is the
> basis of the attack.* Rule 12(b) provides that a motion to dismiss for failure to state
> a claim will be automatically converted into a motion for summary judgment (Rule
> 56) if the court considers matters outside the pleadings. This provides an additional
> safeguard for the plaintiff, for, in addition to having all his allegations taken as true,
> the trial court cannot grant the motion unless there is no genuine issue of material
> fact. This protection is not, however, provided the plaintiff who faces dismissal for
> lack of subject matter jurisdiction. As the Court of Appeals for the Third Circuit has
> explained:

>> The facial attack (on subject matter jurisdiction) does offer similar safeguards
>> to the plaintiff: the court must consider the allegations of the complaint as
>> true. The factual attack, however, differs greatly for here the trial court may
>> proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at
>> issue in a factual 12(b)(1) motion is the trial court's jurisdiction — its very
>> power to hear the case — there is substantial authority that the trial court is
>> free to weigh the evidence and satisfy itself as to the existence of its power
>> to hear the case. In short, no presumptive truthfulness attaches to plaintiff's
>> allegations, and the existence of disputed material facts will not preclude the

---

[10]Federal Rule of Civil Procedure 12(b)(1) provides:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim,
> counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if
> one is required, except that the following defenses may at the option of the pleader be made by motion:
> (1) lack of jurisdiction over the subject matter....

[11]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted
as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

trial court from evaluating for itself the merits of jurisdictional claims.

*Williamson*, 645 F.2d at 412-13 (quoting *Mortensen v. First Federal Savings and Loan Association*,

549 F.2d 884, 891 (3rd Cir. 1977))(emphasis added); *see also Barnett v. Okeechobee Hospital*, No.

00-13222, 2002 WL 261950, *3 (11th Cir. Feb. 25, 2002); *Lawrence v. Dunbar*, 919 F.2d 1525,

1528-29 (11th Cir. 1990) (per curiam). The attack in this case is factual, because matters outside the

pleadings have been presented to and considered by the court.

## II. SUMMARY OF RELEVANT FACTS

Linda Conway was a civilian computer specialist employed at Watervliet Arsenal in New

York.[12]  She was issued travel orders on September 20, 1999, directing her to attend a computer

training course at the United States Army's Redstone Arsenal located near Huntsville, Alabama.[13]

Upon arrival in Huntsville, Mrs. Conway rode as a passenger in a rental automobile driven by

defendant Robert Colby, an employee of the United States Department of Defense who apparently

was also attending the same computer training course. As the plaintiff alleges, that vehicle collided

with a vehicle driven by defendant David Wayne Perry on September 29, 1999.[14]  Mrs. Conway

suffered blunt force trauma to the right side of her head and chest, which caused her death.[15]

Plaintiff thereafter filed a claim under the Federal Employees' Compensation Act ("FECA"),

seeking benefits for his wife's injuries and resulting death.  His claim was received by the

Department of Labor's Office of Workers' Compensation Programs ("OWCP") on November 10,

1999.[16]  The OWCP determined that Linda Conway was a federal employee acting within the scope

---

[12]Defendant's evidentiary submission (doc. no. 11), Exhibit A, at 1-2.

[13]*Id.*

[14]*Id.*, Exhibit C, at 2.

[15]*Id.*

[16]*Id.*, Exhibit B, at 1.

of her employment at the time of her injuries and death. Accordingly, FECA benefits were paid to plaintiff in the amount of $57,255.39 from September 30, 1999 through December 29, 2001.[17] Plaintiff will continue to receive FECA benefits on a monthly basis, in the amount of $1,959.69 (plus annual cost-of-living adjustments), every 28 days.[18]

Plaintiff also filed a claim for administrative relief with the United States Army's Claims Office at Redstone Arsenal on September 28, 2001.[19] He sought $1,100,000 in damages for his deceased wife's injuries and resulting wrongful death.[20] Shortly thereafter, on October 1, 2001, plaintiff filed the subject complaint in the Circuit Court of Madison County, Alabama. Following removal, the Army Claims Office notified plaintiff, by means of a certified letter dated January 7, 2002, that his claim was denied for the following reasons:

> At the time of the alleged incident Linda L. Conway was on the job as a federal employee of the United States. The Federal Employees Compensation Act (FECA) is the exclusive remedy for any physical injury or death arising out of her employment (5 U.S.C. Section 8116(c)); Johansen v. United States, 342 U.S. 427 (1957). Accordingly, your client's claim is barred by FECA.[21]

### III. DISCUSSION

**A.    Plaintiff's Claims Against the United States**

Simultaneously with the removal of this action from state court, defendant Robert W. Colby filed an answer to the complaint, asserting (in his "third affirmative defense") that plaintiff's claims were barred by the so-called "*Feres* Doctrine."[22] That doctrine grew from the Supreme Court's

---

[17]Defendant's evidentiary submission (doc. no. 11), Exhibit B, at 2.

[18]*Id.* at 2.

[19]*Id.*, Exhibit C, 1-2.

[20]*Id.*

[21]*Id.*, Exhibit D.

[22]Answer (doc. no. 2), at 2.

decision in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), holding that

> the Government is not liable under the Federal Tort Claims Act for injuries to
> servicemen where the injuries arise out of or are in the course of activity incident to
> service. Without exception, the relationship of military personnel to the Government
> has been governed exclusively by federal law. We do not think that Congress, in
> drafting this Act, created a new cause of action dependent on local law for service-
> connected injuries or death due to negligence. We cannot impute to Congress such
> a radical departure from established law in the absence of express congressional
> command.

*Id.* at 146, 71 S. Ct. at 159.

The Supreme Court had occasion to revisit *Feres* in *Johnson v. United States*, 481 U.S. 681,

107 S.Ct. 2063, 95 L.Ed.2d 648 (1987), but declined to modify the doctrine created by that case.

Instead, the Court emphasized "three broad rationales underlying the *Feres* decision."

> In *Feres,* this Court held that service members cannot bring tort suits against the
> Government for injuries that "arise out of or are in the course of activity incident to
> service." 340 U.S., at 146, 71 S.Ct., at 159. This Court has never deviated from this
> characterization of the *Feres* bar. Nor has Congress changed this standard in the
> close to 40 years since it was articulated, even though, as the Court noted in *Feres*,
> Congress "possesses a ready remedy" to alter a misinterpretation of its intent. *Id.,* at
> 138, 71 S.Ct., at 155. Although all of the cases decided by this Court under *Feres*
> have involved allegations of negligence on the part of members of the military, this
> Court has never suggested that the military status of the alleged tortfeasor is crucial
> to the application of the doctrine. Nor have the lower courts understood this fact to
> be relevant under *Feres.* Instead, the *Feres* doctrine has been applied consistently to
> bar all suits on behalf of service members against the Government based upon
> service-related injuries. We decline to modify the doctrine at this late date.
>
> This Court has emphasized three broad rationales underlying the *Feres*
> decision. See *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 671-
> 673, 97 S.Ct. 2054, 2057-2058, 52 L.Ed.2d 665 (1977), and n.2, *supra.* An
> examination of these reasons for the doctrine demonstrates that the status of the
> alleged tortfeasor does not have the critical significance ascribed to it by the Court
> of Appeals in this case. First, "[t]he relationship between the Government and
> members of its armed forces is 'distinctively federal in character.'" *Feres,* 340 U.S.,
> at 143, 71 S.Ct., at 158 (quoting *United States v. Standard Oil Co.,* 332 U.S. 301,
> 305, 67 S.Ct. 1604, 1606, 91 L.Ed. 2067 (1947)). This federal relationship is
> implicated to the greatest degree when a service member is performing activities

-7-

incident to his federal service.  Performance of the military function in diverse parts of the country and the world entails a "[s]ignificant risk of accidents and injuries." *Stencel Aero Engineering Corp. v. United States, supra,* 431 U.S., at 672, 97 S.Ct., at 2058.  Where a service member is injured incident to service — that is, because of his military relationship with the Government — it "makes no sense to permit the fortuity of the situs of the alleged negligence to affect the liability of the Government to [the] serviceman." 431 U.S., at 672, 97 S.Ct., at 2058.  Instead, application of the underlying federal remedy that provides "simple, certain, and uniform compensation for injuries or death of those in armed services," *Feres, supra,* 340 U.S., at 144, 71 S.Ct., at 158 (footnote omitted), is appropriate.

Second, the existence of these generous statutory disability and death benefits is an independent reason why the *Feres* doctrine bars suit for service-related injuries. In *Feres,* the Court observed that the primary purpose of the FTCA "was to extend a remedy to those who had been without; if it incidentally benefited those already well provided for, it appears to have been unintentional." 340 U.S., at 140, 71 S.Ct., at 156.  Those injured during the course of activity incident to service not only receive benefits that "compare extremely favorably with those provided by most workmen's compensation statutes," *id.,* at 145, 71 S.Ct., at 159, but the recovery of benefits is "swift [and] efficient," *Stencel Aero Engineering Corp. v. United States, supra,* 431 U.S., at 673, 97 S.Ct., at 2058, "normally requir[ing] no litigation," *Feres, supra,* 340 U.S., at 145, 71 S.Ct., at 159.  The Court in *Feres* found it difficult to believe that Congress would have provided such a comprehensive system of benefits while at the same time contemplating recovery for service-related injuries under the FTCA.  Particularly persuasive was the fact that Congress "omitted any provision to adjust these two types of remedy to each other." 340 U.S., at 144, 71 S.Ct., at 158. Congress still has not amended the Veterans' Benefits Act or the FTCA to make any such provision for injuries incurred during the course of activity incident to service. We thus find no reason to modify what the Court has previously found to be the law: the statutory veterans' benefits "provid[e] an upper limit of liability for the Government as to service-connected injuries." *Stencel Aero Engineering Corp. v. United States, supra,* 431 U.S., at 673, 97 S.Ct., at 2059.  See *Hatzlachh Supply Co. v. United States,* 444 U.S. 460, 464, 100 S.Ct. 647, 650, 62 L.Ed.2d 614 (1980) (*per curiam* ) ("[T]he Veterans' Benefits Act provided compensation to injured servicemen, which we understood Congress intended to be the sole remedy for service-connected injuries").

Third, *Feres* and its progeny indicate that suits brought by service members against the Government for injuries incurred incident to service are barred by the *Feres* doctrine because they are the "*type[s]* of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *United States v. Shearer,* 473 U.S., at 59, 105 S.Ct., at 3044 (emphasis in original).  In every respect the military is, as this Court has

-8-

recognized, "a specialized society." *Parker v. Levy,* 417 U.S. 733, 743, 94 S.Ct. 2547, 2555, 41 L.Ed.2d 439 (1974). "[T]o accomplish its mission the military must foster instinctive obedience, unity, commitment, and esprit de corps. " *Goldman v. Weinberger,* 475 U.S. 503, 507, 106 S.Ct. 1310, 1313, 89 L.Ed.2d 478 (1986). Even if military negligence is not specifically alleged in a tort action, a suit based upon service-related activity necessarily implicates the military judgments and decisions that are inextricably intertwined with the conduct of the military mission. Moreover, military discipline involves not only obedience to orders, but more generally duty and loyalty to one's service and to one's country. Suits brought by service members against the Government for service-related injuries could undermine the commitment essential to effective service and thus have the potential to disrupt military discipline in the broadest sense of the word.

*Johnson,* 481 U.S. at 686-91, 107 S.Ct. at 2066-68 (footnotes omitted).

The rationales supporting the *Feres* Doctrine, as elaborated by the Supreme Court in *Johnson,* arguably apply here. Indeed, the Supreme Court observed at the beginning of its discussion in *Johnson* that, "[a]lthough all of the cases decided by this Court under *Feres* have involved allegations of negligence *on the part of members of the military*, this Court has never suggested that the military *status* of the alleged tortfeasor is crucial to the application of the doctrine." *Id.* at 686, 107 S.Ct. at 2066 (emphasis supplied). Plaintiff's decedent was a civilian employee of the United States Army, and defendant Robert W. Colby was a civilian employee of the Department of Defense. Thus, plaintiff's claims against defendant Colby may well have been barred by the *Feres* Doctrine. This court need not address that issue further, however, because the United States abandoned the argument in its brief in support of the subject motion to dismiss.[23]

The effect of this court's order substituting the United States for defendant Robert W. Colby, and dismissing the claims asserted against him,[24] is to posture the case as if the claims against

---

[23]Further, the *Feres* Doctrine has no application to plaintiff's claims against defendant David Wayne Perry, as Perry was not an employee of the United States on the date of the incident giving rise to this suit. Any action maintained against defendant Perry is an action against a private individual; thus, the defenses afforded to the United States as a sovereign entity are not available.

[24]*See supra* note 7 and accompanying text.

defendant Colby had been originally asserted against the government pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. ("FTCA"). The government's motion to dismiss asserts that the United States has not waived its sovereign immunity to a FTCA claim arising from an injury and death for which benefits have been awarded under the Federal Employees' Compensation Act, 5 U.S.C. § 8101 *et seq*.,[25] and, therefore, that plaintiff's claims are due to be dismissed.

Section 8102 of the Federal Employees' Compensation Act ("FECA") provides workers' compensation benefits for federal civilian employees who are injured or killed while in the performance of duties.

> The United States shall pay compensation as specified by this subchapter for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty, unless the injury or death is—
>
> (1)    caused by willful misconduct of the employee;
>
> (2)    caused by the employee's intention to bring about the injury or death of himself or of another; or
>
> (3)    proximately caused by the intoxication of the injured employee.

5 U.S.C. § 8102(a). Further, FECA provides the exclusive remedy against the United States for any federal employee whose injuries or death fall within the scope of the Act, and it precludes recovery in another direct proceeding or under a federal tort liability statute. *See* 5 U.S.C. §§ 8116(c)[26] and

---

[25]*See* the brief submitted in support of the government's motion to dismiss (doc. no. 10), at 1-2.

[26]5 U.S.C. § 8116(c) provides, in part:

The liability of the United States ... with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States ... to the employee, his legal representative, spouse ... and any other person otherwise entitled to recover damages from the United States ... because of the injury or death in a direct judicial proceeding, in a civil action ... or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute....

-10-

8173.[27]  As the Eleventh Circuit observed in *Woodruff v. United States*, 954 F.2d 634 (11th Cir.

1992),

> [t]he Secretary of Labor is authorized to administer FECA, to promulgate rules and regulations to aid its administration and to decide all questions arising under the statute.  5 U.S.C. §§ 8145 and 8149.  Under the authority granted in § 8145(2), the Secretary has delegated responsibility for FECA management to the Director of the Office of Workers' Compensation Programs ("OWCP").
>
> After being presented with a claim by an employee, the Director must make final findings of fact and decide whether the employee is entitled to compensation under FECA.  5 U.S.C. § 8124(a).  The Director's determination can be appealed by the employee to the ECAB [Employee's Compensation Appeals Board], an appellate arm of the Department of Labor.  5 U.S.C. § 8149.  The ECAB is bound to follow applicable law and the rules and regulations of the Secretary, but its decisions on the claims of individual employees are final.  *Id.*
>
> The Secretary's decision to award or deny compensation to a particular claimant is not subject to judicial review.  5 U.S.C. § 8128(b).  Conclusions of law and fact made by the Secretary or the ECAB are also immune from judicial review. *Id.*

*Woodruff*, 954 F.2d at 636-37 (footnotes omitted).

The *Woodruff* opinion is instructive on more levels than just that portion of its text quoted above.  The plaintiff there was the widow of a civilian employee of the United States Army assigned to Redstone Arsenal.  *Id.* at 637.  During his lunch hour, the plaintiff's decedent entered his automobile, with the intention of driving off the military installation.  Before actually exiting government property, however, his vehicle was struck by a military bus, and "Woodruff suffered severe injuries that left him incapacitated and that required treatment in a rehabilitation center for three years.  Woodruff never recovered from his injuries, and died during the pendency of [his]

---

[27]5 U.S.C. § 8173 provides:

The liability of the United States ... with respect to the disability or death resulting from injury ... of an employee referred to by sections 8171 and 8172 of this title, shall be determined as provided by this subchapter.  This liability is exclusive and instead of all other liability of the United States....

appeal." *Id.* at 638.

Woodruff's wife applied for FECA benefits for her husband on March 2, 1987, a few days after the accident. After filing the application, Mrs. Woodruff retained an attorney who told her that her husband might have a cause of action under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* He also advised her that the FTCA action would be barred if she accepted FECA benefits. The attorney then sent two letters to the representative of the Workmen's Compensation Office at Redstone Arsenal, the first on March 5, 1987 and the second on March 30, 1987, seeking to withdraw the Woodruffs' application for FECA benefits.

However, after conducting "extensive legal research and factual investigation," the attorney decided that there might be a substantial question of FECA coverage. For this reason, he requested on April 4, 1987 that the OWCP formally process and consider Woodruff's FECA claim.

On September 14, 1987, the OWCP found that Woodruff was eligible for FECA benefits because he had been injured while in the performance of his duties. ... Consequently, it concluded that he was eligible for FECA compensation. ...

Woodruff exercised his right of appeal under § 8149 and requested that the ECAB [Employees' Compensation Appeals Board] either comply with his initial request to withdraw his FECA claim or deny the relief awarded by the OWCP. The ECAB agreed with the OWCP that Woodruff's injuries were compensable under FECA. ... [T]he appellate panel held that he was eligible for FECA coverage since he received his injuries while in the course of employment: i.e., he was injured on his employer's premises and while on his way to lunch. It affirmed the OWCP's decision that he was eligible for FECA benefits. The ECAB issued its final order on October 26, 1989, denying Woodruff's petition for rehearing. *Gordon R. Woodruff,* No. 89-390 (ECAB October 26, 1989).

During the pendency of his FECA claim, Woodruff filed an action pursuant to FTCA in the United States District Court for the Northern District of Alabama....

*Woodruff,* 954 F.2d at 638-39.

Here, as in *Woodruff,* plaintiff submitted a FECA claim for his decedent's injuries and resulting death prior to filing the state court action subsequently removed to this court. The Secretary of Labor ultimately found that plaintiff's decedent was a federal employee acting within the scope of her employment at the time she sustained fatal injuries. In compliance with the

Secretary's findings, plaintiff was awarded FECA benefits.  There is nothing in the record tending to indicate that plaintiff ever appealed the Secretary's findings, nor did he submit any filing with this court challenging the Secretary's findings.  Consequently, plaintiff is bound, and this court is barred from reviewing the Secretary's actions, unless plaintiff can demonstrate that the Secretary violated either a clear statutory mandate or the Constitution.

> FECA is a comprehensive workers' compensation law for federal employees that is designed to provide quick and uniform coverage for work-related injuries.  *Gill v. United States,* 641 F.2d 195 (5th Cir. Unit A Feb.1981).  The Secretary's final determination to award or deny coverage under FECA in a particular case is usually not subject to judicial review that could prolong the administrative process. 5 U.S.C. § 8128(b)(2).  After the Secretary makes a determination to award benefits, the injured employee's exclusive remedy is to accept FECA coverage.  5 U.S.C. § 8116(c); *Cobia v. United States,* 384 F.2d 711 (10th Cir.1967), *cert. den.,* 390 U.S. 986, 88 S.Ct. 1182, 19 L.Ed.2d 1290 (1968).
>
> There are two instances, however, in which a federal court may exercise jurisdiction over a final decision of the Secretary under FECA.  *Staacke v. United States Secretary of Labor,* 841 F.2d 278 (9th Cir.1988).  The federal courts retain jurisdiction to review charges that the Secretary violated a clear statutory mandate or prohibition, and to consider constitutional claims.  *Id.*
>
> Woodruff applied for and was awarded FECA coverage for his injuries. Therefore, we are barred from reviewing the Secretary's actions unless Mrs. Woodruff can show that the Secretary violated either a clear statutory mandate or the Constitution.

*Woodruff,* 954 F.2d at 639; *see also, e.g., Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 90, 112 S.Ct. 486, 493, 116 L.Ed.2d 405 (1991) ("FECA contains an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary of Labor's determination of FECA coverage. Consequently, the courts have no jurisdiction over FECA claims where the Secretary determines that FECA applies.") (quoting *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 780, and n.13, 105 S.Ct. 1620, 1627, and n.13, 84 L.Ed.2d 674 (1985)).

-13-

Plaintiff has neither alleged nor demonstrated that the Secretary violated either a clear statutory mandate or the Constitution.  In fact, plaintiff has not responded in any way to the United States' motion to dismiss.  The court notes that plaintiff was given notice of the dates by which he should submit a brief or evidentiary materials in opposition to the government's motion to dismiss.[28] It cannot be seriously contended, therefore, that plaintiff was not afforded an opportunity to respond. The court further observes that, even under the heightened safeguards afforded a plaintiff with respect to Rule 56 motions for summary judgment, issues and contentions not raised in a party's brief are deemed abandoned.  *See, e.g.*, *Chapman v. AI Transport* 229 F.3d 1012, 1027 (11th Cir. 2000) (en banc) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards.").  *Cf., e.g., Lucas v. W.W. Grainger, Inc.* 257 F.3d 1249, 1255 n.1 (11th Cir. 2001) ("Lucas has abandoned his unlawful harassment claim by not raising it in his initial brief on appeal.") (citing *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1317 n.17 (11th Cir. 1999)); *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995) ("We note that issues that clearly are not designated in the initial brief ordinarily are considered abandoned.") (quotation marks and citation omitted); *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned."); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).

Accordingly, plaintiff's claims against the United States are due to be dismissed.

**B.      Plaintiff's Claims Against Defendant Perry**

When defendant Robert W. Colby removed the state court action, this court acquired

---

[28]*See supra* note 9 and accompanying text.

supplemental jurisdiction over plaintiff's wrongful death claims against defendant David Wayne Perry pursuant to 28 U.S.C. § 1367(a). The disposition of those claims giving rise to federal subject matter jurisdiction, however, raises the question of whether this court should retain jurisdiction over plaintiff's companion claims against defendant Perry. A district court may decline to exercise supplemental jurisdiction when:

> (1)     the claim raises a novel or complex issue of State law,
>
> (2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)     *the district court has dismissed all claims over which it has original jurisdiction*, or
>
> (4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis supplied). As the Supreme Court has observed:

> a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349-50, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988) (citing *Mine Workers v. Gibbs*, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent [now referred to as "supplemental"] jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n.7,

108 S.Ct. at 619 n.7; *see also L.A. Draper & Son V. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428

(11th Cir. 1984) (stating that "if the federal claims are dismissed prior to trial, *Gibbs* strongly

encourages or even requires dismissal of state claims").

Here, plaintiff's federal claims have been eliminated at an early stage in the litigation, prior

to the commencement of discovery. Moreover, while plaintiff's remaining claims against defendant

Perry do not raise novel or particularly complex issues of state law, wrongful death claims

nevertheless are "something the courts of Alabama are in the best position to undertake and, for

reasons of federalism, should undertake in this sensitive area." *Nolin v. Isbell*, 207 F.3d 1253, 1258

(11th Cir. 2000).  This court, nevertheless, has considered the possibility that it might possess

original jurisdiction under 28 U.S.C. § 1332.

Plaintiff is a resident of Troy, New York, while defendant Perry resides in Athens,

Alabama.[29]  Thus, there is complete diversity of citizenship.  Even so, plaintiff's complaint does not

demand a specific sum as damages:   rather, he seeks only "such amount as the jury deem[s]

proper...."  The Eleventh Circuit has instructed district courts confronted with a question of diversity

jurisdiction that, "where a plaintiff has made an unspecified demand for damages in state court, a

removing defendant must prove by a preponderance of the evidence that the amount in controversy

more likely than not exceeds the $50,000 [now $75,000] jurisdictional requirement." *Tapscott v.*

*MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *overruled on other grounds by*

*Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  The ambiguity of the amount claimed

as damages in a state court complaint is of paramount importance, because the jurisdiction of this

court is limited:  district courts have only the power to hear and determine those cases authorized by

---

[29]Defendant's evidentiary submission (doc. no. 11), Exhibit C, at 2.

-16-

the Constitution or Congress. *See, e.g., Kokkonen v. Guardian Life Insurance Company of America,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* at 377, 114 S.Ct. at 1675 (citation omitted); *see also Tapscott,* 77 F.3d at 1356. In light of such principles, the Eleventh Circuit favors remand when removal jurisdiction is not absolutely clear. In essence, "[r]emoval statutes are to be strictly construed, with all doubts resolved in favor of remand." *Lowe's OK'd Used Cars, Inc. v. Acceptance Insurance Co.,* 995 F. Supp. 1388, (M.D. Ala. 1998) (citing *Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir. 1996)); *see also Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994).

Here, of course, the sole removing defendant did not remove the action based upon the parties' diversity of citizenship, but instead on the basis of federal question jurisdiction. Hence, he offered no proof on the issue of the amount in controversy. Further, this court has no way of independently determining the amount in controversy, because plaintiff did not respond to the submission order entered on January 29, 2002, and defendant Perry neither joined in the removal, nor appeared here.[30] Indeed, as previously noted,[31] nothing in the record presented to this court indicates whether Perry was served with a copy of the state court summons and complaint prior to removal.

---

[30]This court recognizes that the administrative claim filed by plaintiff with the United States Army Claims Office at Redstone Arsenal on September 28, 2001, pursuant to the Federal Tort Claims Act, sought $1,100,000 in damages for the injuries to and death of his wife. Even so, that claim was based upon the negligent or wanton acts of another civilian employee of the United States (former defendant Robert W. Colby), who — plaintiff averred, under the penalties for perjury, *see* 18 U.S.C. §§ 287, 1001 — "made *an illegal U-turn in front of an oncoming truck* which hit the car at Mrs. Conway's door." Defendant's evidentiary submission (doc. no. 11), Exhibit C, at 2, ¶ 8 ("Basis of Claim") (emphasis supplied).

Thus, for aught that appears, any acts or omissions of defendant David Wayne Perry may not have been a proximate cause of the injuries to and death of plaintiff's decedent. In any event, such circumstances certainly would mitigate any claim for damages against him.

[31]*See supra* note 4.

-17-

For all of the foregoing reasons, therefore, this court determines that it should exercise its discretion in favor of remanding plaintiff's claims against defendant Perry to state court. An appropriate order consistent with this memorandum opinion shall be entered contemporaneously herewith.

Done this _5th_ day of April, 2002.

United States District Judge